UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Huntington National Bank, *successor-by-merger to TCF National Bank*, | File No. 21-cv-2089 (ECT/DTS) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Campisi Environmental Associates, Inc., *doing business as* Corporate Environmental Advisors; and Joseph S. Campisi, | |
| Defendants. | |

---

Daniel N. Moak and Mark G. Schroeder, Taft Stettinius & Hollister LLP, Minneapolis, MN, for Plaintiff Huntington National Bank.

---

Plaintiff Huntington National Bank, successor-by-merger to TCF National Bank, seeks entry of a default judgment against Defendants Campisi Environmental Associates, Inc., and Joseph S. Campisi. ECF No. 12. Huntington alleges that Defendants breached their obligations by failing to make required monthly payments as required under the parties' credit agreements. The judgment Huntington seeks against Defendants (jointly and severally) would include actual damages of $273,466.22, attorneys' fees and expenses, and post-judgment interest under 28 U.S.C. § 1961. Huntington's motion will be granted.[1]

---

[1] The Clerk properly entered Defendants' default. ECF No. 11. The summons and complaint were served on Defendant Joseph S. Campisi on September 22, 2021, ECF No. 5, and on Defendant Campisi Environmental Associates on November 24, 2021, and they have not responded or otherwise appeared. *See generally*, Docket; *see also* Schroeder Decl. [ECF No. 10] ¶¶ 6-8. Plaintiff also has served the motion for default judgment and

The basic process for determining whether a default judgment should be entered is straightforward. Entry of default means that the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A Mary K. Kane, *Federal Practice and Procedure* § 2688.1 (4th ed. Apr. 2022 Update) (footnotes omitted). Thus, it must first be determined whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the amount and other terms of the default judgment must be ascertained. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000).

Start with the factual allegations in the complaint, which are accepted as true. Huntington National Bank ("Huntington") is a national banking association, and a successor-by-merger to TCF National Bank ("TCF"). Compl. [ECF No. 1] ¶ 1. The detailed complaint describes a financing arrangement between TCF, Defendant Campisi Environmental Associates Inc.'s ("Campisi Environmental"), and Defendant Joseph S. Campisi, whereby TCF financed Campisi Environmental's purchase of software and equipment. On September 10, 2020, Campisi Environmental purchased software and

---

supporting papers on Defendants. ECF Nos. 18. A hearing on the motion was held on April 18, 2022. ECF No. 19. Defendant did not appear or otherwise respond.

equipment from Bright Vanguard LLC, a broker in San Antonio, Texas, as reflected in an Invoice attached to the Complaint.  Compl. ¶¶ 2, 7, Ex. A.

To finance this purchase, Campisi Environmental and its Guarantor, Joseph Campisi, executed several agreements with TCF, as described in the complaint: an Installment Payment Agreement ("IPA"), a Pay Proceeds and Acceptance Confirmation ("Confirmation"), a Continuing Guaranty ("Guaranty"), and an Authorization for Automatic Electronic Payment ("Authorization") (together, the "Credit Agreements").  *See* Compl. ¶¶ 7–32.  Campisi Environmental and TCF entered into the IPA on September 11, 2020.  The IPA set forth the terms of a loan from TCF to Campisi Environmental for $284,470.67 to finance Campisi Environmental's software and equipment purchase.  Compl. ¶ 8, Ex. B.  The IPA provided that Campisi Environmental was to make monthly payments of $5,550.42 to TCF over 60 months.  Compl. ¶ 9, Ex. B.  The IPA provided other rights and remedies to TCF, including TCF's right to impose a late fee or charge interest for late payments, and TCF's right to obtain attorneys' fees, costs, and expenses associated with exercising any right or remedy available to it under the IPA.  *Id*. ¶¶ 10–15, Ex. B.  The IPA was secured by a Guaranty from Joseph Campisi in favor of TCF.  *See* Compl. ¶ 23, Ex. E.  Under the Guaranty, Joseph Campisi "unconditionally and absolutely guarantee[d] the full and prompt performance" of Campisi Environmental's payment (and other) obligations under the IPA.  *Id*. ¶ 24.  In connection with the IPA, Campisi Environmental provided TCF with the Confirmation, dated September 11, 2020.  *Id*. ¶ 18, Ex. D.  The Confirmation confirmed that the software and equipment had been delivered satisfactorily and as described in the IPA, and it authorized TCF to pay Bright Vanguard

the financed amount. *Id*. ¶ 19, Ex. D. Accordingly, TCF funded the financed amount. *Id*. ¶ 22, Ex. D.

In June 2021, Campisi Environmental stopped making its monthly payments. *Id*. ¶ 29, *see also* Ex. H; Shamblott Decl. [ECF No. 16] ¶ 5. On July 20, 2021, TCF sent Defendants a notice of default. *Id*. ¶ 28, Ex. G. Defendants still did not pay, and on September 17, 2021, TCF sent another notice of default and demanded payment of all outstanding amounts from Campisi Environmental and Joseph Campisi, pursuant to the terms of the parties' Credit Agreements. *Id*. ¶¶ 30-31, Ex. H.

These taken-as-true allegations constitute legitimate causes of action for breach of contract against Campisi Environmental and Joseph Campisi, *see id*. ¶¶ 34–48.[2] Minnesota law applies because the IPA and the Guaranty contain Minnesota choice-of-law provisions. Ex. A ¶ 11; Ex. E. Under Minnesota law, the elements of a breach-of-contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Huntington plainly and plausibly pleads these elements against both Defendants. The formation of the IPA and the Guaranty, and other agreements are alleged in detail, and nothing about Huntington's allegations leaves room to question the validity of either of these two contracts' formation. The IPA imposed no conditions precedent to TCF's ability

---

[2] Although the Complaint includes six counts, Huntington's Motion for Default Judgment focuses only on Counts I & II—for breach of contract against Campisi Environmental and Joseph Campisi, respectively. Mem. in Supp. [ECF 14] at 6.

to accelerate payments upon Campisi Environmental's failure to make payment, *see* Ex. B. ¶¶ 7, 8, but if giving notice was a condition precedent to triggering TCF's remedies under the IPA or any other contract, then Huntington has alleged that it gave notice. *See* Compl. ¶¶ 28–33; Exs. G, H. Huntington's allegations show that Campisi Environmental and Joseph Campisi, as guarantor, did not fulfill their payment obligations. Compl. ¶¶ 29, 33. Finally, if Huntington were required to allege damages to state a claim for breach of contract, *see Park Nicollet Clinic*, 808 N.W.2d at 833 n.5 ("We have recognized that the plaintiff may not have to allege that the breach caused damages in order to state a claim for breach of contract."), it has done so. Compl. ¶ 33.

Here, Huntington seeks only monetary relief. *See* Mem. in Supp. at 6–7. Though Defendants' liability is established, Huntington "must still prove its actual damages to a reasonable degree of certainty" before entry of default judgment. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). "A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly." *Radisson Hotels Int'l, Inc. v. Fairmont Partners LLC*, No. 19-cv-1176 (WMW/BRT), 2020 WL 614810, at *2 (D. Minn. Feb. 10, 2020).

Huntington has demonstrated to a reasonable degree of certainty that it is entitled to recover actual damages of at least $273,466.22, exclusive of additional accruing interest, attorneys' fees, and other applicable costs, fees, and expenses. *See* Compl., Mem. in Supp. at 4; Shamblott Decl. ¶ 5. The IPA provides that following an Event of Default, TCF could "declare immediately due and payable and recover from [Campisi Environmental], as liquidated damages and not as a penalty, the sum of all amounts then due, plus all unpaid

Payments for the remaining term of this IPA, discounted from their respective due dates at the implicit interest rate for this IPA," plus "a fee equal to 5% of this amount if the Event of Default occurs during months 0 through 12."  Ex. B ¶ 8.

Huntington also seeks $7,259.30 in reasonable attorneys' fees and costs.  Mem. in Supp. at 7; Moak Decl. [ECF No. 15] ¶ 10; Schroeder Decl. [ECF No. 20] ¶ 4.  The IPA provides that upon an Event of Default, TCF may recover "all costs and expenses incurred . . . in the exercise of any right or remedy available to it under this IPA . . . including . . . attorneys' fees and expenses."  Ex. B ¶ 8.  Huntington has submitted documentation establishing both its entitlement to and the reasonableness of its request for attorneys' fees and costs.  Moak Decl. ¶¶ 5–10; Schroeder Decl. ¶¶ 3-4.

Finally, Huntington seeks post-judgment interest.  Federal law governs post-judgment interest in a diversity action.  *See Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435 (8th Cir. 1991).  Federal law provides for post-judgment interest "on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Huntington has a right to post-judgment interest under § 1961.  Post-judgment interest will begin to accrue from the day judgment is entered and on the total award, including costs and attorneys' fees, until the judgment is satisfied.  *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021).  Post-judgment interest will be awarded at "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by

the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff's Motion for Default Judgment [ECF No. 12] is **GRANTED**;

2. Plaintiff shall recover from Defendants jointly and severally an award of:

    a. $49,953.78 for nine unpaid monthly installments from June 2021–February 2022;

    b. $208,111.50 to reflect the present value of 42 remaining installments;

    c. $10,405.58 as a 5% penalty;

    d. $4,995.36 in late fees;

    e. $7,259.30 in attorneys' fees and costs; and

    f. post-judgment interest at the maximum rate allowed by law, accruing from the date judgment is entered until the judgment is satisfied and computed as described in 28 U.S.C. § 1961(b).

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 22, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court